UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARL HEAD,

    Plaintiff,

                                                                            CASE NO.:  6:15-cv-00385-PGB-KRS

v.

CITY CAB COMPANY OF ORLANDO, INC.,
a Florida corporation,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND TO QUASH
DEFENDANT'S  SUBPOENA TO SPRINT FOR
<u>PLAINTIFF'S CELL PHONE RECORDS</u>**

Plaintiff CARL HEAD, through undersigned counsel, respectfully moves pursuant to Fed. R. Civ. P. 26(c), and M.D. Fla. R. 3.01(c) for a Protective Order and to Quash Defendant CITY CAB's third-party subpoena to Sprint for his cell phone records because the subpoena is overly broad, not likely to lead to admissible evidence, and not properly limited in scope, and states in support:

1.      This is an action brought under Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as amended ("FLSA") in which Plaintiff seeks overtime pay he claims is due to him from his prior employer, CITY CAB.

2.      On Wednesday, September 23, 2015, Defendant sent Plaintiff's counsel two proposed subpoenas: one to Sprint to obtain Plaintiff's cell phone records, the other to Data Doctors, a company that worked on several computers for Plaintiff. (Exhibit 1, redacted to remove Plaintiff phone number and address which are protected from public disclosure under Florida Statute §119.071(4) since he is a former law enforcement officer).

3. On Monday, September 28, 2015, Plaintiff's counsel sent an email discussing the objections to each of these subpoenas. (Exhibit 2)

4. Later that same day, counsel for the parties had a Local Rule 3.01(g) discussion about the subpoenas.

5. First, Plaintiff's counsel established that the Defendants had not yet served the subpoenas but that it was Defendant's counsel's plan to send them out at the end of the day.

6. During that discussion, Plaintiff's counsel retracted the objections to the subpoena to Computer Doctors, leaving only the Sprint subpoena at issue.

7. The subpoena to Sprint specifically sought as follows:

> Any and all telephone records, billing statements, itemized call logs, and any other documents pertaining to the telephone service for the time period January 1, 2010 to date of response for: Carl Head.

8. In that discussion, counsel for the parties discussed their divergent opinions as to whether the Plaintiff had any right to privacy or privacy expectation of third parties in his cell phone records.

9. Although still contending that a privacy right exists, Plaintiff's counsel conceded that such privacy right may in certain circumstances be outweighed by a highly relevant and narrowly constructed request and inquired of Defendant's counsel about the relevance and discussed ways that perhaps the request may be narrowed to protect Plaintiff's privacy rights and those of any third parties.

10. Plaintiff's counsel expressed concern over the overbreadth of the subpoena, in that it seeks to obtain everything that Sprint has ("any other records"), which could potentially include content of text messages, photos and information regarding the third parties who either communicate with Plaintiff by text or over the phone (although it is the undersigned's understanding that such

content is purportedly not retained by Sprint).

11. Defendant's counsel stated that the request would only produce a list showing phone calls and text messages to and from Plaintiff's cell phone, with the phone numbers, dates and time of call, and duration, but would not include content, although he also stated that he may later seek to obtain the content of all text and voice messages.

12. Although the way the subpoena is written is broader than simply seeking call logs, Defendant was unwilling to make any changes to the wording of the subpoena regarding the scope of items sought, except (initially in the first 3.01(g) conference)[1]/ as to the timeframe post-employment.

13. Defendant's counsel claimed the subpoena requested information that could be related to the defenses in the action; he intends to see if the phone records show that Plaintiff was conducting his real estate business while working for Defendant, in an attempt to reduce the amount of hours that Plaintiff claims for unpaid overtime.

14. Defense counsel explained that the plan was to determine the owners of all of the phone numbers shown in the call and text logs during Plaintiff's work time and his non-work time, and then defense counsel would try to determine whether each of the calls made during working hours was a personal one or a real estate business call, and, if a real estate business call, then Defendant would try to reduce Plaintiff's working hours by the time spent on the call and thus reduce the amount of overtime to which Plaintiff may be entitled.

---

[1]/Defendant later decided that it would continue to seek records through to the date of Sprint's response and sent out the subpoena as originally proposed.

15.     Plaintiff had also objected to the timeframe of the subpoena (" January 1, 2010[2]/ to date of response") since Plaintiff left Defendant's employ nearly a year ago, October 20, 2014, so the request includes almost a year of post-employment time.

16.     The undersigned asked for a rationale to allow Defendant in this FLSA case to obtain records showing his post-employment phone activity since he was not claiming overtime due for any time after his employment with Defendant.

17.     Defendant's counsel explained that he thought the information post-employment sought was relevant and discoverable and how it would fit into a defense was that he wanted to compare the amount of phone activity while Plaintiff was employed with Defendant versus the time on the phone after his employment with Defendant was over, that somehow a pattern may reveal some relevant information.

18.     However, after some discussion, including Plaintiff's concern of potential retaliation against other employees and that Defendant is seeking post-termination phone records to determine which of its employees may have called or texted Plaintiff after his termination of employment, defense counsel offered to reduce the timeframe to only six months of post-employment time, explaining that this timeframe was appropriate since real estate clients may be around for as long as six months before the deal is finished so the phone records may show some relevant information regarding real estate clients of Plaintiff from his time still working for Defendant.

19.     The counsel for the parties also discussed some of the ways the subpoena to Sprint

---

[2]/Initially Plaintiff's counsel thought that January 2010 is when Plaintiff began his employ with Defendant because he had mis-dated his application. However, as shown by Exhibit 5 to this Motion, he was employed a year later - on January 10, 2011. Plaintiff also objects to any phone records being disclosed from before he began his employ with Defendant and relayed that objection to Defendant who reiterated the same arguments as for the post-employment records. (Exhibit 6)

could be narrowed and some of the privacy issues could be lessened.

20. Defendant offered to have the information for "counsel's eyes only" until they figure if and how any of the information is relevant to their defenses and defense counsel then would want to present it to the Court and then the information would be in the public record, although some of the information would be redacted.

21. Counsel for Defendant refused to delay the service of the Sprint subpoena for the parties to talk further about any other ways to narrow the request or for the Court to resolve the objections and Plaintiff's counsel did not think the offers by Defendant would be sufficient and she also would not agree to lift her objections to the Sprint subpoena without talking further to Plaintiff.

22. Within a few hours of the 3.01(g) conference with defense counsel, the undersigned spoke at length with Plaintiff. However, the proposed concessions by Defendant ---for the information to be released to attorney's eyes only at first and shortening the timeframe of the post-termination information sought --- were insufficient to allay the concerns of Plaintiff who raised some additional concerns that were not addressed in the parties' first 3.01(g) conference:

(1) Plaintiff is a former law enforcement officer and he and his law enforcement associates who call him are protected under Florida Statute §119.071(4) from certain information being revealed, including their telephone numbers. The subpoena to Sprint would impermissibly violate that statute and impact the privacy rights of Plaintiff and third parties who have a statutorily greater protection than other third parties.

(2) The cell phone and text records sought may also impermissibly delve into the privileged communications of counsel with Plaintiff. In addition to this case, the undersigned and attorney Patricia Sigman represented Plaintiff in his case against the Town of Windermere (Case No. 6:12-CV-710-ORL-28TBS), from early 2011 until that case was

settled in May of 2013. Furthermore, the undersigned has represented Plaintiff as his legal counsel in several other personal matters throughout the period since then, so the records sought will also show phone calls and texts to and from his legal counsel throughout most of the period Defendant seeks records from Sprint. If the Sprint records produced have any content, this could invade attorney-client privilege.

(3) Phone calls made during working hours, whether personal or real estate related, are not necessarily time taken away from his work for Defendant, since the nature of his work for Defendant often involved waiting for periods of time at an accident scene for a state trooper, tow truck, mechanic, safety director or others to show up, and he also had to drive from one location to another to do his work for Defendant. Even if he made a personal or a real estate call during those times, he was still working for Defendant: he was in a place he had to be to do his job with Defendant, often with nothing to do other than wait for the person to show up to the accident scene or, when driving, until he arrived at his destination. Moreover, although he contends he often did not get to take a lunch break, he does not say he never did take any breaks and calls could have been made while he was out to lunch or on break. Because the call records will not prove that he was abusing the work time, the subpoena will not result in any useful information to support any defense.

23. The undersigned then sent an email to Defendant's counsel, explaining these additional bases for objections to the subpoena, and requested that he not send out the Sprint subpoena for service until we could talk further, giving him my cell number to call me. (Exhibit 3)

24. That night, as the undersigned began preparing the Motion for Protective Order, she realized that she needed to hold another 3.01(g) conference with counsel for the Defendants if he had sent out the subpoena for service so that she could properly reflect that a 3.01(g) conference was held

before filing a Motion to Quash and that she needed to discuss with him the additional bases for objections before filing the Motion For Protective Order.

25. The following morning, after not hearing from defense counsel, the undersigned had her assistant call Defendant's counsel's office to set up another 3.01(g) conference and to find out if they had sent out the Sprint subpoena for service.

26. After having no response until near the end of the day, the assistant to defense counsel could not say whether the subpoena was sent out but did set up a 3.01(g) conference for 9 a.m. the next morning, September 30, 2015.

27. When they spoke, defense counsel said that the Sprint subpoena was already sent out for service.

28. They discussed the other issues raised by Plaintiff and resolved some of them.

29. Counsel for the parties agreed that Fla. Stat. §119.071(4) would not prevent Defendant from obtaining the phone records but that it would limit how the records would be produced to the Court and others. To prevent public record of the phone numbers of law enforcement, Defendant's counsel reiterated that they would initially limit such records to attorney eyes only and would redact the phone numbers of law enforcement (and all other persons) if and when submitted to Court or shown to the client. So this issue was resolved.

30. Counsel for the parties also discussed the issue of the records showing any calls made to or from counsel, and agreed that, if the Defendant is allowed to get the phone records, that the date, time and length of any such calls or texts with counsel are not privileged, and that any content would be privileged, so, if produced, Defendant would not view or use any such content. The parties were able to thus resolved the issue of attorney-client privilege in the phone records.

31. The counsel for the parties were unable however to resolve the issue of whether the

call records would produce evidence of Plaintiff abusing his on the job time by making phone calls during his work hours. Plaintiff's counsel argued that the calls could have been made during waiting time or driving time when he was actually performing work for Defendant or on breaks; Defendant contended that such time nonetheless was discoverable and should still be deducted from any time Plaintiff claims to be working for Mears/City Cab.

32. Defendant also claims that the phone records may help them corroborate some other evidence it claims to have regarding Plaintiff doing real estate work, including showing houses while on the clock for Defendant, and that such records are potentially relevant and discoverable.

33. Defendant additionally stated that the phone records may be used also regarding Plaintiff's credibility.

34. Plaintiff continues to maintain that the information contained in any phone logs would be too tenuous to be relevant to any claim or defense and that the subpoena for phone records was not reasonably calculated to lead to admissible evidence. The tangential relevance of the requested records to the subject matter of the case does not create good cause to expand the scope of discovery to the phone records Defendant seeks.

35. Despite their earlier discussions, Defendant also decided NOT to limit the subpoena to only six months of post-employment records, stating simply it is not overbroad.

36. Defendant's counsel also stated that he believed, despite the wording of his subpoena, that all that would be produced by Sprint would be logs of phone and text communication showing phone numbers, date, time and duration. However, he did not limit his request in the subpoena to such logs, so the subpoena as written may produce more than what Defendant claims to be seeking.

37. Defendant's counsel sent an email confirming their discussion. (Exhibit 4)

**MEMORANDUM OF LAW**

As a threshold matter, the Court must consider whether Plaintiff has standing to challenge the subpoena at issue. Generally, a party does not have standing to challenge a subpoena served on a non-party, unless that party has a personal right or privilege with respect to the subject matter of the materials subpoenaed. *Anglin v. Maxim Healthcare Services, Inc.*, Case No. 6:08-cv-689-Orl-22DAB (M.D. Fla. April 3, 2009), *citing Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997). A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable. *Id., citing Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan.1995). Moreover, a party may request a protective order for a subpoena to a non-party if the subpoena seeks materials that are not relevant. *Nathai v. Florida Detroit Diesel-Allison, Inc.*, 2009 WL 2424570, *1 (M.D. Fla. Aug. 5, 2009) *(citing Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005)). The burden is on the party seeking a protective order and the party must show good cause. *Id. (citations omitted).*

Plaintiff can show good cause why the subpoena should be quashed. First, Plaintiff contends that he has a right of privacy in his personal cell phone records. Numerous courts have held that parties have a personal interest in their telephone records sufficient to confer standing to challenge a subpoena directed to a third-party.[3]/ *See, e.g., Mancuso v. Florida Metropolitan University*, 2011 WL 310726 (S.D. Fla. Jan. 28, 2011); *Ademiluyi v. Phillips*, 2014 WL 7012493, *2 (D.Nev. Dec. 12, 2014) (one has personal interest in securing privacy of his cell phone records.); *Winter v. Bisso Marine Co., Inc.*, 2014 WL 3778833, *2 (E.D.La. July 29, 2014) (noting personal interest in privacy

---

[3]/Plaintiff also contends that the records sought are subject to a third party statutory privacy right to the extent that they may reveal phone numbers of law enforcement officers and attorney-client privilege if any content is revealed, although as discussed above the law enforcement privacy right and attorney client privilege issues have been worked out between the parties, should the Court allow Defendant to obtain the phone records sought.

of one's cell phone records); *Armor Screen Corp. v. Storm Catcher, Inc.*, Case No. 07-81091-Civ, 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008) (Vitunac, M.J.) (*citing Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1079))( A party may have standing to quash a non-party subpoena if it can allege a "personal right or privilege with respect to the materials subpoenaed."); *Herff Jones, Inc. v. Oklahoma Graduate Servs.*, No. 2007 WL 2344705, at *3 n.4 (W.D. Okla Aug. 15, 2007) (quashing subpoenas for cell phone records, holding "although they satisfy the broad relevancy standard, the requests are overly broad.").

Because Plaintiff has a personal interest in the privacy of his cell phone records, he has standing to challenge the subpoena issued by Defendant to Sprint. Standing is especially clear in this case, given the broadly-worded subpoena at issue. Thus, Plaintiff has standing to challenge the subpoena to determine whether his privacy rights in the cell phone records are outweighed by the relevance of those records to any party's claims or defenses herein. Fed. R. Civ. P. 26(b)(1).

The situation in this case is much like in *Palma v. Metro PCS Wireless, Inc.*, 18 F. Supp. 3d 1346 , 1349 (M.D. Fla. 2014) where a defendant in an FLSA case "hop[ed] to discover financial records that reveal Plaintiffs conducted personal banking during work hours. Even if they did, this is not the smoking gun Defendant seems to think it is; Plaintiffs may have engaged in personal banking during breaks from work. And although neither party focuses on Defendant's request for Plaintiffs' cell phone records, the motion is denied on this topic as well." Defendant CITY CAB's mere hope that the discovery yields relevant evidence is not enough to warrant production of Plaintiff's cell phone records as sought. Although some small subsection of the records sought may satisfy the broad relevancy standard, the requests are overly broad and should not be allowed as written and the motion to quash should be granted.

Plaintiff understands well that, under Rule 26 relevancy is "construed broadly to encompass

any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). A protective order should be entered only when the movant makes a particularized showing of "good cause" and specific demonstration of fact by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements and unsupported contentions do not suffice. *Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981). Courts have broad discretion at the discovery stage to determine whether or not a protective order is appropriate and what degree of protection is required. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36-37, 104 S. Ct. 2199, 81 L. Ed. 2d 17(1984).

Moreover, whether good cause exists for a protective order is a factual matter to be decided by the nature and character of the information in question. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1315 (11th Cir. 2001). When issuing a protective order the Court must articulate its reasons for granting the protective order sufficient to allow for appellate review.[4]/ Additionally, the Court must evaluate and balance the interests of the parties and the non-parties concerning dissemination of discovery material. *In Re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355-357 (11th Cir. 1987).

Pursuant to Fed.R.Civ.P. 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense of any party — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court

---

[4]/Defendant's counsel asserted in the parties' second 3.01(g) conference that Defendant will challenge and appeal any decision that in any way restricts the subpoena they have issue to Sprint.


may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The purpose of discovery is to require disclosure of relevant information so that the resolution of the civil action is based upon a full and accurate understanding of the facts. *Anglin v. Maxim Healthcare Services, Inc.*, 2009 WL 928305, *2 (M.D. Fla. April 2, 2009) *(citing United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958))*. When the discovery requested appears relevant on its face, then the party objecting to the discovery based upon relevance has the burden to show the requested discovery is not relevant. *Unlimited Resources, Inc. v. Deployed Resources, LLC,* 2009 WL 212188 at 3 (M.D. Fla. Jan. 29, 2009). The scope of discovery is broad, however, the information must be relevant to a claim or defense, but need not be admissible at trial. *Anglin,* 2009 WL 928305 at *2 *(citations omitted).* However, even if a request for production seeks relevant information, however, it may nonetheless be denied if it is overbroad.

It is important to stress how invasively and intrusively Defendant plans to use the information they hope to obtain from the Sprint subpoena. As explained to the undersigned, the Defendant's counsel will try to figure the identity of every person who has called or texted Plaintiff or has been called or texted by Plaintiff over the last five years — two years of which time he was not even working for Defendant. Then, they will try to categorize each caller as either personal (including counsel) or business (meaning his real estate), either by calling the persons or by divining it through other means. Then they will track the patterns of these calls on both non-working days and times and working days and times as well as to track the usage or duration on working days and times.

However, it is not possible for Defendant to pinpoint when Plaintiff was on a break to determine which calls may have been made during non-break time, or even whether the call logs

simply denote a message left with no call being taken. Moreover, Plaintiff may have made or taken calls while driving from one point to another or when waiting by an accident site for a trooper, insurance adjuster, maintenance person, tow truck, etc. During these times, while actually performing work on his scheduled hours, Plaintiff could have made or taken calls and text messages that should not be deducted from his work time for Defendant. There simply is no way for Defendant to show whether those calls were made when he instead should have been performing some other duties for Defendant. Plaintiff's Declaration submitted with this Motion to Quash and for Protective Order establishes the factual basis underlying the inability of the phone records to establish any improper use of working time in the use of his cell phone.

Plaintiff also contends that his telephone records prior to and subsequent to his employment with Defendant are not at all relevant to any issue in this case nor reasonably calculated to lead to discovery of admissible evidence.

Plaintiff requests that the Court quash the subpoena altogether because the records will not show any relevant information since -- even if he made or took calls during his working hours for Defendant on his personal cell phone--there are no sufficient time-keeping records that could establish whether the calls were made on his lunch breaks or otherwise during periods where he was either waiting or driving. The phone and text logs requested are overly broad and Defendant's subpoena should be quashed.

Defendant also seeks the billing records regarding Plaintiff's Sprint account; billing records would show amounts due and paid and dates of payments made. None of the billing information is in anyway relevant to any issue in this action. Defendant should not be allowed to obtain the billing records.

Defendant contends that it should be able to obtain Plaintiff's cell phone records for the entire

period requested on the subpoena to Sprint, which includes time before he started working for Defendant, while he was working part-time for Defendant and did receive overtime pay, during days and times of day he was not working for Defendant, and for nearly a year since he left the employ of Defendant.  The frequency or extent of such communication in his non-working hours and for a year before or after his employment with Defendant would indicate very little relevant to this case, and the scant relevance of this broad request does not outweigh the Plaintiff's privacy interests in his cell phone records.

Moreover, as worded, the scope of the request for documents in the Defendant's subpoena to Sprint is far broader than the Defendant's representation of what is sought: phone logs of calls and text messages.  The request in the subpoena instead seeks:

> Any and all telephone records, billing statements, itemized call logs, and any other documents pertaining to the telephone service for the time period January 1, 2010 to date of response for: Carl Head.

"Any and all telephone records, billing statements" and "any other documents" greatly exceeds the information Defendant claims to seek: "itemized call logs" alone  would have been the appropriate description for what Defendant claims to seek but did not bother to limit its wording, even after Plaintiff objected to the over-inclusive language.  As worded, the subpoena could possibly produce far more than the call logs, including potentially some content.  Defendant refused to narrow the scope of the subpoena to reflect the information it claimed it actually wanted.

Plaintiff contends that the Defendant's subpoena to Sprint should be quashed since it is overly broad both in scope of time and in kinds of documents requested.  The limited and tangential relevance of the requested records to the subject matter of the case is insufficient good cause to allow Defendant to subpoena all of Plaintiff's cell phone records and for an overly broad period that includes one year prior and one year subsequent to his employment with Defendant.  The subpoena

to Sprint should be quashed and a Protective Order should be issued.

## Requested Relief

For the reasons stated above, Plaintiff respectfully asks this Court to quash the Defendant's Subpoena to Sprint in its entirety and issue a Protective Order.

## CERTIFICATE OF GOOD FAITH CONFERENCE

As spelled out in more detail above, the undersigned counsel for Plaintiff and Kevin Shaughnessy, counsel for Defendant, have conferred in good faith to attempt to resolve this matter, both by email exchanges and in two substantive telephone calls on September and 30, 2015, in compliance with Middle District of Florida Local Rule 3.01(g), but the parties have been unable to agree on the resolution of the motion.

Respectfully Submitted,

 */s/ Martha A. Chapman*
Martha A. Chapman
Florida Bar No. 0004464

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this date, October 2, 2015, the foregoing was served upon the counsel for Defendant via the Court's EC/CMF email system and to Sprint c/o Subpoena Compliance, 6480 Sprint Parkway, Kansas 66251 via fax: 816-600-3161.

 */s/ Martha A. Chapman*
Martha A. Chapman
Florida Bar No. 0004464

MARTHA A. CHAPMAN, P.A.
1219 E. Livingston Street.
Orlando, FL 32803
Telephone: 407-896-4835
Fax: 407-574-7912

DATE: October 2, 2015                                   Marty@martychapmanlaw.net

ATTORNEY FOR PLAINTIFF