### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CARL HEAD,**

     **Plaintiff,**

                                **CASE NO.:  6:15-cv-00385-PGB-KRS**

**v.**

**CITY CAB COMPANY OF ORLANDO,**
**INC., a Florida corporation,**

     **Defendant.**

_____/

### DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT
#### (With Incorporated Memorandum of Law)

Defendant, CITY CAB COMPANY OF ORLANDO, INC. (City Cab) pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests the Court grant summary judgment against Plaintiff, CARL HEAD (Plaintiff), as to all claims asserted against City Cab.

### INTRODUCTION

In an effort to manufacture an overtime lawsuit, the Plaintiff, relying, in part, on revisionist history, downplays his job duties as a Safety Investigator for a federally-regulated transportation company.  While employed, the Plaintiff exhibited his skills and discretion in performing safety-sensitive work.  This included, among other undisputed safety-related functions, investigating over 250 accidents involving motor coaches and vehicles regulated by the U.S. Department of Transportation (DOT), issuing speeding tickets to DOT-regulated drivers, and addressing potentially-impaired drivers of DOT-regulated vehicles.  Post-employment, he conjures up a job description and duties of no significance to avoid two clear

exemptions to the Fair Labor Standards Act (FLSA) overtime requirements, *despite admitting* that he was terminated as a Safety Investigator for violating DOT regulations by failing to administer a breath test to a DOT–regulated motor coach driver involved in an accident.  The Plaintiff's post-hoc rationalizations fall far short of establishing a violation of the FLSA.

There is no genuine issue as to any material fact, and City Cab is entitled to the entry of judgment in its favor as a matter of law.  The Plaintiff was properly classified as an exempt employee under the Motor Carrier Act (MCA) exemption to the FLSA.  He indisputably was engaged in activities affecting the safety of vehicles traveling in interstate commerce.  Because he was exempt, he is not entitled to overtime pay.  Moreover, his primary job duty required him to exercise discretion and independent judgment with respect to matters of significance related to the management or general business operations of City Cab, qualifying him for the administrative exemption under the FLSA.  The Plaintiff, therefore, was classified properly as an exempt employee.  Accordingly, this Court should grant summary judgment in City Cab's favor.

## STATEMENT OF UNDISPUTED FACTS

### I.      City Cab And Mears Destination Services, Inc. (MDS)

City Cab and MDS are carriers that transport passengers by motor vehicle for profit. Declaration of Christopher Earl (Earl Dec.), attached as Exhibit 1, at ¶ 5.  MDS is licensed with the DOT, has been issued a DOT number, and holds authorizations from the Federal Motor Carrier Safety Administration (FMCSA) necessary to be an interstate motor carrier.[1]

---

[1]      *See* Carrier Registration and Safety Rating attached as Composite Exhibit 2.

*Id.* at ¶ 8.   The MDS fleet is comprised of over 300 DOT-regulated vehicles.   *Id.* at ¶ 9.

Several of these vehicles travel interstate during the course of a calendar year.   *Id.* at ¶ 9.

MDS and City Cab have contracts with cruise lines, the Orlando International Airport, and

the Orlando Sanford International Airport for the transportation of passengers to and from the

airport and the cruise port in Brevard County.   *Id.* at ¶¶ 15-16.   Customers also have the

opportunity to buy fares and vouchers for ground transportation as part of a bundle directly

from MDS or City Cab, in addition to other U.S. and international companies.   *Id.* at ¶ 17.

MDS motor coaches and shuttle vans are vehicles regulated by the DOT.   Declaration

of Michael Cone (Cone Dec.), attached as Exhibit 3, at ¶ 5; Earl Dec. at ¶ 9.   MDS motor

coaches seat up to 55 passengers.   Earl Dec. at ¶ 10.   MDS shuttle vans seat up to 11

passengers.   *Id.* at ¶ 10.   Motor coaches weigh over 10,000 pounds.   *Id.* at ¶ 10.

## II.  The Plaintiff's Relevant Training And Experience

The Plaintiff received training in investigating property and personal crimes through

his prior law enforcement experience, Head Dep. 16:13-17, and had experience in accident

investigation, traffic control enforcement, and incident investigations.   Cone Dec. ¶ 4.   In

addition to his prior law enforcement experience, the Plaintiff received training on breath

alcohol testing (with a Breathalyzer), Head Dep. 97:15-20, and was certified as a Breath

Alcohol Technician through MDS.   Cone Dec. at ¶ 4.   MDS also provided the Plaintiff

training on radar detection.   *Id.* at ¶ 4.   In addition, the Plaintiff concedes he was trained on

DOT requirements for certain regulated drivers.   Head Dep. 97:21-98:9.

### III.     The Plaintiff's Job Duties As A Safety Investigator

The Plaintiff was employed as a Safety Investigator, Am. Compl. at ¶¶ 15, 16, ECF No. 18, performing work for both City Cab and MDS.  Am. Compl. at ¶ 13; Cone Dec. at ¶ 2. When the Plaintiff was employed as a full-time Safety Investigator, he was paid a salary of approximately $37,000 annually.   Pl.'s Am. Resp. to Def.'s Interrog. No. 3, attached as Exhibit 4.

When applying for the Safety Investigator position, the Plaintiff understood he was applying for a safety-related position.  Head Dep. 91:19-92:6.  At the time of his application, the Plaintiff also understood he would be investigating accidents involving vehicles operated by both City Cab and MDS.  *Id.* at 95:5-12.  The Plaintiff similarly understood he would be enforcing safety policies for both City Cab and MDS.  *Id.* at 95:13-15.

As a Safety Investigator, the Plaintiff's job duties required him to respond to crashes, robberies, and other incidents involving Mears' DOT-regulated vehicles.  *Id.* at 18:24-19:1; 62:7-63:21.  In addition, among other safety-affecting activities, the Plaintiff would do the following: conduct investigations throughout a large territory in Central Florida, including Orange and Osceola Counties,[2] *id.* at 110:8-25, including assaults and batteries on drivers, *id.* at 144:7-22; and investigate thefts, complaints against drivers, persons involved in accidents or involved in criminal incidents, credit card fraud, and instances where it was suspected counterfeit money was used in transactions.  *Id.* at 63:7-21.  In conducting investigations into counterfeit money, Safety Investigators would attempt to get a statement from the driver and

---

[2]     While the Plaintiff never had to, it remained possible that, as a Safety Investigator, he may have been required to travel out of state to investigate an accident in which a motor coach, a DOT-regulated vehicle, was involved. Earl Dec. at ¶ 6.

video from the cab. *Id.* at 147:14-148:1. Only the Safety Investigators, the Safety Manager, the Director of Safety, and the Director of Electronics and Technology — eight people total — have access to the cameras, video software and photographic data. Cone Dec. ¶ 10. Safety Investigators assisted in the prosecution of criminal cases by, for example, obtaining GPS tracking and follow-up statements from drivers. Head Dep. 146:10-19.

Typically, only one Safety Investigator responds to an accident, *id.* at 71:18-21, and each Safety Investigator investigated crashes of all of the vehicles owned or operated by MDS, including buses and shuttle vans, *id.* at 62:14-19, 77:23-78:2, 118:2-6, in addition to the MDS luxury fleets, which included the town cars, sport utility vehicles, vans, and the trolleys operated on International Drive (I-Drive). *Id.* at 118:7-12. The amount of time a Safety Investigator would spend at an accident scene would vary depending on the circumstances. *Id.* at 113:6-24.

As part of his accident investigations, the Plaintiff admits he would do the following: (a) investigate injuries and property damage arising out of accidents, *id.* at 62:20-63:6; (b) interact with parties unrelated to MDS and City Cab, including law enforcement and public safety officials, *id.* at 63:22-64:5; (c) generate confidential reports, *id.* at 64:17-20, 182:4-11; (d) describe the scene and, occasionally, draw sketches/diagrams of how the accident occurred, *id.* at 74:9-17, sometimes measuring skid marks, *id.* at 235:4-5, 238:23-25; and (e) interview drivers, passengers, and witnesses to accidents. *Id.* at 235:6-9. The Plaintiff's reports then were used to determine whether an employee would be disciplined for an accident. *Id.* at 66:12-14. The reports also could be used in the defense of future claims or litigation. Earl Dec. at ¶ 14.

In addition to investigating accidents and other incidents, Safety Investigators were responsible for enforcing and following federal regulations governing drivers of federally-regulated vehicles.  Head Dep. at 76:25-77:22, 98:10-12.  Safety Investigators possessed the ability to cite drivers for speeding and to report the unsafe operation of vehicles, *id.* at 67:8-18, which the Plaintiff had the responsibility to ensure.  *Id.* at 71:14-17.  In fact, Safety Investigators like the Plaintiff had the discretion to suspend drivers and remove (or "deadline") vehicles from service when investigating an accident.  Earl Dec. at ¶ 14.  Their discretion extended to having vehicles towed from the scene of the incident.  *Id.*  Safety Investigators had the responsibility to investigate complaints of drunk/impaired drivers with commercial driver's licenses (CDL), which included administering the portable breath alcohol test to the drivers.  Head Dep. 73:6-25.  The document used by Safety Investigators when reporting the administration of a breath alcohol test to a driver cites DOT regulation 49 C.F.R. Part 40.  Head Dep. 164:2-9, Ex. 10.  In instances where the driver was inebriated or impaired, the Safety Investigator enforced MDS's policy of suspending the driver.  *Id.* at 74:2-8; *see* Earl Dec. at ¶ 14.  The Plaintiff's failure to administer a breath alcohol test to a motor coach driver who was involved in an accident was a contributing factor in his termination.  Head Dep. 169:22-170:21.

## IV.    The Plaintiff's Investigation Of Accidents Specific To DOT-Regulated Vehicles

Depending on the time of year, accident volumes, and other inspection and investigation needs, Safety Investigators spend anywhere from 30 to 50 percent of their time on safety matters related to DOT-regulated vehicles.  Cone Dec. ¶ 5.  The Plaintiff

investigated over 250 incidents involving MDS motor coaches and shuttle vans from 2012 to 2014, as shown below:

| Year | Type of Vehicle | Number of Incidents |
|------|-----------------|---------------------|
| 2012 | Motor Coaches | 62 |
|      | Shuttle Vans | 34 |
| 2013 | Motor Coaches | 39 |
|      | Shuttle Vans | 36 |
| 2014 | Motor Coaches | 45 |
|      | Shuttle Vans | 38 |

Earl Dec. at ¶ 13.  The Plaintiff was terminated on October 20, 2014.  Am. Compl. at ¶ 20.

## LEGAL ARGUMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Furthermore, the "plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

Only if a reasonable jury could return a verdict for the non-moving party will a factual dispute be considered genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Information Sys. and Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir.

2001).  In assessing whether the movant has met its burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  *Information Sys.*, 281 F.3d at 1224.  Once the moving party has satisfied its burden, the non-movant must present evidence that there is a genuine dispute regarding any issue for which it will bear the burden of proof.  *Celotex*, 477 U.S. at 322, 324.

## I.   THE PLAINTIFF'S CLAIM FAILS BECAUSE THE MOTOR CARRIER ACT RENDERS HIM EXEMPT FROM THE FLSA'S OVERTIME PROVISIONS.

"[A]ny employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to" the Motor Carrier Act of 1935 (MCA), is exempt from the FLSA's overtime regulations.   29 U.S.C. § 213(b)(1). Under the MCA, the Secretary of Transportation (Secretary) has the authority "to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles."  *Spires v. Ben Hill Cty.*, 980 F.2d 683, 686 (11th Cir. 1993); *see also* 49 U.S.C. § 31502(b)(1).

Here, there is no question that City Cab and MDS are common carriers,[3] engage in interstate commerce, and the Plaintiff was engaged in a job directly affecting the safety of motor vehicles regulated by the DOT.[4]  Accordingly, summary judgment is warranted.

---

[3]      There is no dispute that City Cab and MDS are carriers.  Both companies transport passengers by motor vehicle for profit.  Earl Dec. at ¶ 5.

[4]      The Department of Labor (DOL), under the FLSA, and the DOT, under the MCA, exercise mutually exclusive jurisdiction.  *See Spires*, 980 F.2d at 686 (citing *Morris v. McComb*, 332 U.S. 422, 436-7 (1947)); *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009); *see also* 29 C.F.R. § 782.1 ("The [FLSA] confers no authority on the Secretary of Labor . . . to extend or restrict the scope of [the MCA] exemption.").  The Secretary of Transportation, therefore, does not need to exercise the authority to regulate for the MCA to apply; he or she need only possess the authority.  *See Spires*, 980 F.2d at 686; 29 C.F.R. § 782.1.

**A.    The Plaintiff Worked For Carriers Whose Businesses Are Subject To The Secretary Of Transportation's Jurisdiction Because They Are Engaged In Interstate Commerce.**

Courts consider several factors in determining whether a company is subject to the Secretary's jurisdiction.  Some factors weighing in favor of finding a company is subject to the Secretary's authority include, but are not limited to, whether the company holds a DOT license, and whether the company advertises interstate services or holds itself out as an interstate motor carrier.  *Walters*, 575 F.3d at 1227; *Baez v. Wells Fargo Armored Serv. Corp.,* 938 F.2d 180, 182 (11th Cir.1991) (the Interstate Commerce Commission's issuance of permits indicated MCA jurisdiction had been exercised over company).

There is no requirement that a company make a certain number or percentage of interstate trips to be engaged in interstate transportation of persons and under the authority of the Secretary.  *See Chao v. First Class Coach Co.*, 214 F. Supp. 2d 1263, 1270 (M.D. Fla. 2001) (citing *Morris v. McComb,* 332 U.S. 422 (1947)); *Walters*, 575 F.3d at 1227 (a company possessing a DOT license and engaging in some transportation that crosses state lines sufficiently demonstrates it falls under Secretary's authority).  Indeed, as this Court noted, "[m]erely holding itself out as an interstate common carrier" may be sufficient to determine a company is an interstate motor carrier.  *First Class Coach*, 214 F. Supp. 2d at 1271 (citing *Brennan v. Schwerman Trucking Co. of Va.*, 540 F.2d 1200, 1204 (4th Cir.1976)).

City Cab engages in interstate commerce on a daily basis.  The company has a contract with both the Orlando International Airport and the Orlando Sanford International Airport to provide ground transportation services to individuals traveling to and from the

airports. *See Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210 (11th Cir. 2011) (holding company which provided intrastate transport for passengers to and from airport was engaged in interstate commerce for purposes of MCA). Transporting travelers, whose trips began in other states and countries, to and from the international airport so they may continue their interstate travels, evidences City Cab's involvement in interstate commerce. *See generally, id.* Similarly, the sale of tickets and vouchers to U.S. and international companies for the purpose of packaging those tickets and vouchers with local tourist attractions evidences interstate commerce. *See id.*; *First Class Coach*, 214 F. Supp. 2d at 1271; Earl Dec. at ¶ 17. If, for some reason, City Cab's substantial contacts with interstate commerce are not considered sufficient to render it subject to the Secretary's jurisdiction, the Plaintiff still qualifies for the MCA exemption under a joint employer theory. *See Songer v. Dillon Res., Inc.*, 618 F.3d 467 (5th Cir. 2010) (staff leasing company that hired truckers to work for DOT-licensed motor carrier meets the requirements for application of the MCA, and plaintiffs were exempt from overtime provisions of FLSA). Here, the Plaintiff, technically an employee of City Cab, performed substantial work for MDS, a DOT-regulated carrier.

The Plaintiff admits that, while he was employed by City Cab, he also performed work for MDS. Am. Compl. at ¶ 13. Indeed, at the time he applied for his position with City Cab, the Plaintiff understood he would be performing work for MDS. Head Dep. 95:5-12. The Plaintiff's Amended Complaint, however, artfully avoids mentioning the substantial amount of work the Plaintiff, as a Safety Investigator, was required to (and did) perform for MDS. *See generally* Am. Compl. In fact, MDS provided the Plaintiff, and all Safety Investigators, with training he was expected to use during his employment. *See* Cone Dec.

10

¶ 4.

MDS, which is licensed with the DOT and has been issued a DOT number, Am. Compl. at ¶ 40; Earl Dec. at ¶ 8, is indisputably involved in interstate commerce. The Plaintiff's MDS-related duties entailed investigating, and he did in fact investigate, numerous vehicle crashes, including those of vehicles owned or operated by MDS. Head Dep. 62:14-16. Safety Investigators, including the Plaintiff, also would investigate activity related to the MDS luxury fleets, which included town cars, sport utility vehicles, vans, and the trolleys operated on International Drive (I-Drive).[5] *Id.* at 118:7-12.

Arguably, simply possessing the DOT license is sufficient to assert that MDS is subject to the Secretary's jurisdiction. *See Baez*, 938 F.2d at 182. MDS, however, also routinely transports its passengers to and from the Orlando International Airport and the Carnival Cruise Lines' and Disney Cruise Lines' ports so airline passengers may embark on interstate and even international travel. Earl Dec. at ¶ 16. Clearly, MDS is engaged in the interstate transportation of passengers and, consequently, is subject to the DOT's regulations and jurisdiction. As a result, the Plaintiff, who engaged in safety-affecting activities in his work for MDS and City Cab, is exempt from the FLSA's overtime provisions. *See* 29 C.F.R. § 782.2.

### B.    The Plaintiff's Job Required Him To Engage In Activities Directly Affecting The Safe Operation Of Motor Vehicles In Interstate Commerce.

The MCA, notably, does not limit the types of job positions entitled to the overtime exemption. The exemption applies to *any* employee of a common carrier "whose activities

---

[5]    Drivers of trolleys previously have been found by this Court to be covered by the MCA. *See First Class Coach*, 214 F. Supp. 2d at 1275.

directly affect the safety of operations" of motor vehicles.  *See Spires*, 980 F.2d at 686.  The undisputed facts demonstrate the Plaintiff, in his position as a Safety Investigator, was engaged in activities directly affecting the safe operation of motor vehicles in interstate commerce.  Because the Plaintiff's job duties clearly and directly affected the safe operation of Mears' DOT-regulated vehicles, he is exempt from the FLSA.

> **i.      The MCA Exemption Applies To The Plaintiff Because His Duties As A Safety Investigator Involved Safety-Related Activities.**

The Secretary has the authority to prescribe requirements for: "(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation."  49 U.S.C. § 31502(b).  Thus, employees of a motor carrier are subject to the authority of the Secretary and are exempt from the maximum hour requirements of the FLSA.

Given the broad language of the MCA, courts have gone beyond job titles or names in determining whether the MCA applies to individual employees.  Indeed, courts look to the employee's job duties.  *See McIntyre v. FLX of Miami, Inc.*, No. 08-20030-CIV, 2008 WL 4541017, at *6 (S.D. Fla. Oct. 8, 2008).  The DOL's regulations also include loaders and driver's helpers as safety-sensitive positions.  *See* 29 C.F.R. § 782.2.

The DOL (not DOT) regulations are inconsistent on the types of employees covered by the MCA.  In one section, the regulations seemingly attempt to limit the MCA exemption to four categories of employees:  driver, driver's helper, loader, and mechanic.  *Id.* at § 782.2(b)(2).  On the other hand, the regulations are clear that "neither the name given to his

position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of the job." *Id.* And, the regulations explicitly provide that the exemption applies to employees whose *bona fide* job duties involve the performance of safety-affecting activities of the character described in paragraph § 782.2(b)(2). *Id.* at § 782.2(b)(3). The DOL regulations also draw the distinction between employees who are called upon in the ordinary course of their employment to perform safety-affecting activities and other employees who are a member of a group of drivers, driver's helpers, loaders, or mechanics, who need only be "*likely to be*" called upon to perform safety-affecting activities to be exempt:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (**or**, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . .

29 C.F.R. § 782.2(b)(3) (emphasis added).[6] Limiting the MCA exemption to the DOL's enumerated categories (drivers, driver's helpers, mechanics, and loaders), however, both conflicts with the MCA's statutory language and the DOT's regulations, and leads to an illogical result where, as here, an employee clearly works in a safety-affecting role.

Therefore, those employees who do not fall within the traditional categories of driver, loader, mechanic, or driver's helper may be exempt from the FLSA's overtime provisions

---

[6] This has led courts to find that employees not employed as a driver, driver's helper, loader, or mechanic, can be exempt under the MCA. *See McIntyre*, 2008 WL 4541017 (finding a dispatcher exempt under the MCA).

under the MCA.[7]  It is clear beyond cavil that the Plaintiff's job involved significant work related to the safety of MDS's DOT-regulated vehicles in addition to City Cab's vehicles.  A recent decision of the Southern District of Florida buttresses this conclusion.

In *McIntyre*, the court determined a dispatcher, whose duties included calling mobile mechanics for truck drivers stranded because of flat tires or mechanical breakdowns, assigning drivers to trucks based on the plaintiff's determination of the vehicle's safety and suitability for the given task, checking vehicles for tire safety and oil, and confirming vehicles could be safely operated prior to the driver leaving the facility, was engaged in safety-affecting activities such that the MCA exemption applied.  2008 WL 4541017.  Here, the Plaintiff's duties, which bear a striking resemblance to the *McIntyre* plaintiff's duties, involved making significant determinations about the safety and operability of vehicles by their drivers, and sufficiently establish that the Plaintiff engaged in safety-affecting activities as a Safety Investigator.

As a Safety Investigator, the Plaintiff was responsible for citing drivers for traffic infractions,[8] and investigating crimes, accidents, and complaints regarding impaired drivers.  Head Dep. 67:8-18, 74:9-17, 235:6-9.  The Plaintiff's duties also included monitoring MDS motor coach activities, and investigating accidents involving DOT-regulated vehicles.  *Id.* at

---

[7]      Admittedly, the DOL's "Fact Sheet," a non-binding information piece that does not rise to the level of a regulation (or, certainly, a law), attempts to limit the exemption to the enumerated jobs.  *See* DOL Fact Sheet No. 19.  That interpretation, which both contradicts and undermines the express language of the MCA and the DOL's regulations, is entitled to no deference.  Moreover, the Fact Sheet cannot contradict express statutory language adopted by Congress.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984).  Thus, there is no restriction on the types of jobs potentially covered by the MCA exemption, as long as, like here, the individual's job duties involve safety-affecting activities.

[8]      By way of example, the Plaintiff identified a citation he issued in February 2014 to a DOT-regulated shuttle van driver.  *See* Head Dep. 160:14-25, Ex. 9.

74:9-17, 235:6-9.  There are over 300 DOT vehicles in MDS's fleet, all of which fell under the Plaintiff's jurisdiction as a Safety Investigator.  Earl Dec. at ¶¶ 9, 11.

Indeed, from 2012 through 2014, the Plaintiff, in his capacity as a Safety Investigator employed by City Cab, investigated over 250 incidents involving MDS motor coaches and shuttle vans, all of which are DOT-regulated vehicles engaged in the interstate transport of passengers.  *See* Earl Dec. at ¶¶ 9, 13.  In less than three years (the Plaintiff did not work the last three months of 2014), therefore, the Plaintiff investigated a total of 146 motor coach (annual average of 48.67 per year or 4.06 per month), and 108 shuttle van (annual average of 36 per year or 3 per month) accidents.  This amounts to a combined total of 254 accidents, which is 84.67 per year (when dividing by three years) or 7.06 per month (when dividing by 36 months), involving DOT-regulated vehicles.

When investigating accidents, City Cab and MDS granted the Plaintiff the authority to conduct a full investigation.  Head Dep. 74:9-17, 235:6-9.  His investigation could include administering breath alcohol tests to the driver of the vehicle involved, *id.* at 73:6-25, and, when appropriate, dead-lining the vehicle, Earl Dec. at ¶ 14, and removing the driver from duty.  Head Dep. 74:2-8; Earl Dec. at ¶ 14.  Notably, the breath alcohol test is recorded on a DOT "Alcohol Testing Form," and, when administering the breath alcohol test, the Plaintiff would certify he "conducted alcohol testing on the [driver] in accordance with the procedures established in the U.S. Department of Transportation regulation, 29 C.F.R. Part 40."  *See* Head Dep. 161:8-24, Ex. 10.

In fact, the Plaintiff's failure to administer a breath alcohol test to a driver involved in an accident in a DOT-regulated vehicle was a factor in the decision to terminate him.  Head

Dep. 169:22-170:21.  This failure to administer the breath test violated DOT regulations, as the driver was issued a citation and at least one of the other vehicles involved was towed from the scene.  *See* 49 C.F.R. § 382.303; Head Dep. 77:14-22, 169:22-172:7, Ex. 11.

The Plaintiff's responsibilities required him to ensure passengers in MDS's and City Cab's motor vehicles were not exposed to unsafe conditions.  There is no question the Plaintiff engaged in safety-affecting activity.  He is therefore exempt from any overtime requirements of the FLSA.

### ii. The Plaintiff Was Involved In Interstate Commerce Because His Safety-Related Activities Affected Motor Vehicles In Interstate Commerce.

The Plaintiff's allegation that he never drove out of the state, Am. Compl. ¶ 41, 42, has no bearing on whether he engaged in activities affecting the safety of motor vehicles in interstate commerce.  Importantly, the Plaintiff does not need to have engaged personally in interstate travel.  Rather, courts consistently have found employees engaging in only intrastate transportation are exempt under 29 U.S.C. § 213(b)(1) if they are part of a continuous stream of commerce.  *See Walters v. Am. Coach Lines of Miami, Inc.*, 569 F.Supp. 2d 1270, 1287 (S.D. Fla. 2008); *McIntyre v. FLX of Miami, Inc.*, No. 08-20030-CIV, 2008 WL 4541017, at *5 (S.D. Fla. Oct. 8, 2008) ("Transportation within a single state may remain 'interstate' in character when it forms a part of a 'practical continuity of movement' across state lines from the point of origin to the point of destination.") (citing *Foxworthy v. Hiland Dairy Co.,* 997 F.2d 670 (10th Cir.1993) (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568 (1943))); *First Class Coach*, 214 F.Supp.2d at 1271 ("[t]rips which begin and end in Florida as part of interstate or international tours" are considered "interstate travel

if they are part of continuous interstate transportation of passengers" and finding trolley drivers, who drove solely intrastate, exempt from the FLSA's overtime provisions pursuant to the MCA where most of employer's bus drivers regularly transported passengers with "through ticketing" to and from area airports and made hundreds of out-of-state trips); *Garcia v. Fleetwood Limousine, Inc.*, 2007 WL 3286614 (M.D. Fla. November 5, 2007) (finding plaintiff limousine drivers, who had never driven out of the state, but could have been reasonably expected to do so, were exempt from the FLSA's overtime provisions). Moreover, a reasonable expectation that a claimant may be required to travel on an interstate route is sufficient to satisfy the interstate commerce prong of the analysis. *See Walters*, 575 F.3d 1221, 1235 (11th Cir. 2009) (upholding grant of summary judgment in defendant's favor and finding plaintiffs subject to the MCA where plaintiffs admitted they reasonably could be expected to drive airport-to-seaport routes that were part of a through-ticketing arrangement). Safety Investigators may be required to travel out of state to investigate an incident involving an MDS or City Cab vehicle. Earl Dec. at ¶ 6. Because the Plaintiff reasonably could be expected to travel across state lines while performing his duties, the interstate commerce prong is satisfied.[9]

MDS does a substantial amount of work with local theme parks transporting vacationers to and from their hotels, international airports, and cruise lines.[10] These agreements with hubs of interstate commerce demonstrate that employees driving these

---

[9]      Indeed, recently a Safety Investigator was required to travel out of the State to recover a vehicle and drive it back to Florida. Earl Dec. at ¶ 6.

[10]      In instances where a shuttle van or motor coach is unavailable to fulfill its obligations, MDS may authorize a driver to pick up the fare and accept a voucher. When this happens, the driver would be reimbursed by MDS. Earl Dec. at ¶ 18.

routes are involved in interstate commerce.  The Plaintiff, who regulated drivers traveling these routes,[11] therefore, was likewise involved in interstate commerce.

For example, in *First Class Coach*, the Middle District of Florida found a group of trolley drivers, *who did not make any airport or out-of-state trips*, were exempt from the overtime provisions of the FLSA under the MCA exemption.  214 F.Supp. 2d 1263.  In holding the trolley drivers were exempt, the Middle District found the employer's drivers regularly transported passengers who engaged in out-of-state sale and purchase of the company's tickets.  *Id.* at 1271-1273 (finding "no meaningful distinction between the through-ticket arrangement in [*United Transp. Union Local 759 v. Orange Newark Elizabeth Bus Co*, 111 F. Supp. 2d 514 (D.N.J. 2000)] and the out-of-state sale and purchase" of tickets).  In determining whether the MCA exemption applied to First Class Coach, this Court afforded weight to the fact that the transportation package provided by the company, in addition to allowing tourists to see local sites, included ground transportation to and from area seaports and airports.  *Id.* at 1272.

Like the employer in *First Class Coach*, MDS and City Cab provide ground transportation for passengers as part of the continuous stream of commerce.  The companies offer vouchers for ground transportation as part of packaged deals for travel to and from other states and countries. Earl Dec. at ¶ 17.  They also offer through-ticketing transportation from the passenger's point of origin through to Walt Disney World on motor coaches.  Earl Dec. at ¶ 16.  Interestingly, these packages also can include transportation on the International Drive trolleys or on limousines, Earl Dec. at ¶ 17, which are the exact types of

---

[11]     The Plaintiff admitted to patrolling International Drive (I-Drive) and the airport, in addition to other areas. Head Dep. 105:8-107:24.

transportation deemed part of interstate travel by this Court in both *First Class Coach* and *Fleetwood Limousine*.  *See First Class Coach*, 214 F.Supp. 2d 1263; *Fleetwood Limousine*, 2007 WL 3286614.  The through-ticketing arrangements offered by MDS and City Cab mirror those offered by the employer in *First Class Coach*.  *See* 214 F.Supp. 2d 1263.  Thus, the motor coaches, limousines, and trolleys the Plaintiff regulated were engaged in interstate commerce for purposes of the MCA's application.

The Plaintiff was involved significantly in ensuring the safe operation of MDS's interstate transportation of passengers in DOT-regulated vehicles.  Because he engaged in safety-related activities with respect to vehicles traveling interstate, the Plaintiff affected the safe transportation of passengers moving between states.  The obligation to ensure the safety of vehicles and drivers subject to the Secretary's authority clearly qualifies as an activity affecting the safety of motor vehicles.  The Plaintiff, therefore, was "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."  29 C.F.R. § 782.2.  Consequently, he is exempt from the FLSA's overtime provisions.

**II.**     **EVEN IF THE MOTOR CARRIER ACT DOES NOT APPLY, THE PLAINTIFF CANNOT RECOVER UNDER THE FLSA BECAUSE HIS JOB DUTIES FALL WITHIN THE FLSA'S ADMINISTRATIVE EXEMPTION.**

Under the administrative exemption to the FLSA, an employee is exempt from the FLSA's overtime provisions if the employer demonstrates: (1) the employee is compensated on a salary or fee basis at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and, (3) the

employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).

**A.      City Cab Satisfies The Salary Basis Test With Respect To The Plaintiff.**

During the relevant time period, the Plaintiff was paid a salary of approximately $37,000 per year for all hours worked.  Pl.'s Am. Resp. to Def.'s Interrog. No. 3.  Because the Plaintiff's salary exceeds $455 per week, Defendant has met the initial factor of the administrative exemption.  *See id.*

**B.      The Plaintiff's Primary Duty Was The Performance Of Non-Manual Work Directly Related To The Management Or General Business Operations Of City Cab And MDS.**

The Department of Labor's regulations instruct that work directly related to "management or general business operations includes, but is not limited to work, in functional areas such as . . . insurance; *quality control*; . . . *safety and health*; personnel management; . . . public relations, government relations; . . . legal and regulatory compliance; and similar activities."  29 C.F.R § 541.201(b) (emphasis added).  The Plaintiff concedes his "primary job duties were administrative in nature."   Am. Compl. ¶ 24.   The Plaintiff performed non-manual administrative tasks involving quality control and safety such as ensuring that employees were performing their jobs safely and in accordance with company policy, addressing customers' concerns regarding drivers, dealing with third parties at accident scenes on behalf of MDS and City Cab, and assuring compliance with traffic laws and federal regulations.  Head Dep. 63:22-64:2.  His position is therefore exempt.

This Court's ruling in a case involving an analogous position supports City Cab's stance.  In *Juback v. Radioshack Corp.* No. 808-CV-768-T-24TBM, 2009 WL 1259990, at

*3 (M.D. Fla. May 6, 2009), this Court found a Loss Prevention Manager (LPM), who investigated inventory and monetary losses attributed to theft, and performed safety, Sarbanes-Oxley, and loss-prevention compliance audits, was correctly classified as an exempt administrative employee. *Id.* Importantly, the LPM's managers told him which stores to investigate and audit. *Id.* The Court pointed out, however, that the LPM's investigations were "extensive and always different" and that he had the discretion as to how and (sometimes) when to conduct the investigations, and the length of the investigations. *Id.*

Like the LPM in *Juback*, the Plaintiff conducted investigations pertinent to his employer's business operations. His job duties included investigating accidents and the drivers involved in those accidents. The Plaintiff's authority extended well beyond accident investigations. He also investigated incidents involving crimes, Head Dep. 63:12-15, assaults and batteries committed on drivers, *id.* at 63:9-11, credit card fraud, *id.* at 63:16-17, and instances where counterfeit money may have been used in transactions. *Id.* at 63:18-21. Like the LPM's investigations in *Juback*, the investigations the Plaintiff conducted would vary depending on the circumstances. *Id.* at 113:6-24. Thus, the Plaintiff's own testimony conclusively establishes his primary work duties were "directly related to the management or general business operations of the employer." 29 C.F.R. § 541.201(a).

**C.      The Plaintiff's Primary Duty Included The Exercise Of Discretion And Independent Judgment With Respect To Matters Of Significance.**

For an employee to qualify for the administrative exemption, his "primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a); *see id.* § 541.200(a)(3). Generally, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible

21

courses of conduct, and acting or making a decision after the various possibilities have been

considered." *Id.* § 541.202(a). Some factors considered in determining whether an employee

exercises independent judgment and discretion with respect to matters of significance

include, but are not limited to:

> whether the employee has authority to formulate, affect,
> interpret, or implement management policies or operating
> practices; whether the employee carries out major
> assignments in conducting the operations of the business;
> whether the employee performs work that affects business
> operations to a substantial degree, even if the employee's
> assignments are related to operation of a particular segment
> of the business; whether the employee has authority to
> commit the employer in matters that have significant
> financial impact; whether the employee has authority to
> waive or deviate from established policies and procedures
> without prior approval; whether the employee has authority
> to negotiate and bind the company on significant matters;
> whether the employee provides consultation or expert
> advice to management; whether the employee is involved
> in planning long- or short-term business objectives;
> whether the employee investigates and resolves matters of
> significance on behalf of management; and whether the
> employee represents the company in handling complaints,
> arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202.

The Plaintiff's position as a Safety Investigator required that he use discretion and

independent judgment on a daily basis. As a Safety Investigator, it was the Plaintiff's

responsibility to ensure the safe travel of passengers and drivers in City Cab's and MDS's

motor vehicles. As a result, the Plaintiff's work duties included, among other things:

investigating complaints of impaired drivers, which included determining whether a driver

was capable of operating his or her vehicle; citing drivers who failed to operate their vehicles

in a safe manner; investigating accidents, which may result in the suspension of a driver or

the dead-lining of a vehicle at the discretion of the Safety Investigator; collecting and evaluating evidence to determine what happened regarding any accident; and reporting findings regarding accidents and drivers to City Cab and MDS so that appropriate action could be taken against said drivers.  Safety Investigators typically investigated accidents by themselves.  Head Dep. 71:18-21.  When investigating an accident, the Plaintiff, as a Safety Investigator, was responsible for describing the scene and, occasionally, drawing sketches/diagrams of how the accident occurred.  *Id.* at 74:9-17.  This may include measuring skid marks.  *Id.* at 235:4-5, 238:23-25.  Safety Investigators were also expected to interview drivers, passengers, and witnesses to accidents.  *Id.* at 235:6-9.

As the sole representative for the company at a crash scene, the Plaintiff unquestionably exercised independent judgment and discretion.  He determined how sketches, photographs, and reports were portrayed and submitted to the employer.  As the person who interviewed the drivers, passengers, and witnesses to any incidents, the Plaintiff would be the person who determined what facts would need to be recorded and passed on to his employer.  The employer would have to rely on the Plaintiff's representations of the various incidents to make any decisions not already made by the Plaintiff at the time of the investigation.[12]  Furthermore, the Plaintiff, as a former law enforcement officer with extensive training in accident investigations, was providing "consultation or expert advice to management."  *See Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 663 (11th Cir. 2011) (quoting 29 C.F.R. § 541.202(b)).  Accordingly, the record firmly establishes the

---

[12] This is especially true where, as here, Plaintiff, in addition to receiving training through MDS on radar detection and breath alcohol testing, Cone Dec. at ¶ 4, was trained in investigating property and personal crimes through his prior law enforcement experience.  Head Dep. 16:13-17.

Plaintiff regularly exercised discretion and independent judgment on significant matters directly related to the management or general business operations of City Cab.

The Plaintiff may argue he did not exercise discretion and independent judgment because his supervisor had to approve any decisions or recommendations he made. This argument is unavailing. Courts have routinely held that while an administrative employee must exercise independent decision-making, the fact that his superiors may review and approve the employee's decisions before they are final "does not disqualify [the] employee from the administrative exemption." *Viola*, 441 F. App'x at 664. Indeed, this Court clarified that decisions made by the employee "may consist of recommendations for action rather than the actual taking of action." *Hodge v. ClosetMaid Corp.*, No. 5:13-CV-62-OC-10PRL, 2014 WL 1328967, at *10 (M.D. Fla. Apr. 2, 2014) (quoting *Szymula v. Ash Grove Cement Co.,* 941 F.Supp. 1032 (D.Kan.1996)) (finding the phrase "discretion and independent judgment . . . does not necessarily imply that the decisions made by the employee must have finality that goes with unlimited authority and a complete absence of review" and further explaining that the "fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations.").

Accordingly, even if the Plaintiff did not qualify for the MCA exemption, he was an exempt administrative employee. Because the FLSA's overtime provisions are therefore inapplicable, City Cab is entitled to summary judgment as a matter of law.

<u>**CONCLUSION**</u>

The Court should grant summary judgment in favor of the Defendant.

Dated:  May 23, 2016.

Respectfully submitted,

<u>*s/Kevin W. Shaughnessy*</u>
Kevin W. Shaughnessy, Esq.
Florida Bar No.:  0473448
E-Mail:  kshaughnessy@bakerlaw.com
James W. Seegers, Esq.
Florida Bar No.:  0122531
E-Mail:  jseegers@bakerlaw.com
Meagan L. Martin, Esq.
Florida Bar No.:  0089657
E-Mail:  mmartin@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, Florida 32801
Telephone:  (407) 649-4054
Facsimile:  (407) 841-0168
**ATTORNEYS FOR DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 23, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to:

Martha A. Chapman, Esq.
**MARTHA A. CHAPMAN, P.A.**
1219 E. Livingston Street
Orlando, Florida 32803
E-Mail:  marty@martychapmanlaw.net

<u>*s/Kevin W. Shaughnessy*</u>
Kevin W. Shaughnessy

25